# United States District Court
### District of New Mexico

| | |
|---|---|
| Calvary Albuquerque, Inc., Stefan David Grant Green, Keilah Anna Green, *and* H.P.G., *a minor*, <br><br> *Plaintiffs*, <br><br> v. <br><br> Anthony Blinken, *U.S. Secretary of State,* U.S. Department of State, Office of the Legal Adviser for Consular Affairs, U.S. Consulate Johannesburg, U.S. Consulate Cape Town, *and* Unknown Consular Officer, <br><br> *Defendants.* | No. 1:23-cv-00486-KWR-KK |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS'**
**MOTION FOR INJUNCTIVE RELIEF**

Alexander M.M. Uballez
  *United States Attorney*

Benjamin G. Minegar
  *Assistant United States Attorney*
P.O. Box 607
Albuquerque, NM 87103
(505) 346-7274
benjamin.minegar@usdoj.gov

Plaintiffs Calvary Albuquerque, Inc., Stefan Green, Keilah Green, and H.P.G. contend that a host of federal defendants violated their rights to religious freedom by refusing Mr. Green — a worship pastor from South Africa — an R-1 visa to visit the United States and work at Calvary's church. *See* Doc. 1. Seeking an "immediate adjudication" of Mr. Green's visa application "in [his] favor," plaintiffs demand a temporary restraining order (TRO), a preliminary injunction, and an "emergency hearing." Doc. 2 at 1–2, 20.

The Court should reject these demands, as plaintiffs fail to satisfy the heightened standards for disfavored injunctive relief that alters the status quo and seeks all relief that could be obtained at a full trial on the merits.

## BACKGROUND

Defendants described this case's background in detail in their motion to dismiss, Doc. 12 at 2–7, and emphasize here this Court's holding that plaintiffs "delayed in filing" suit and seeking a TRO and that there is therefore "no immediate threat" to their alleged rights, Doc. 11 at 1–2 (collecting decisions).

## ARGUMENT

Injunctive relief preserving the status quo is an "extraordinary remedy never awarded as of right." *Winter v. NRDC*, 555 U.S. 7, 24 (2008); *see Legacy Church v. Kunkel*, 455 F. Supp. 3d 1100, 1131–32 (D.N.M. 2020) (TROs and preliminary injunctions are "extraordinary remed[ies]" subject to the same requirements). That is because injunctive relief, equitable in nature, "forces a party to act or desist from acting, not because the law requires it, but because the law *might* require it." *O Centro v. Ashcroft*, 389 F.3d 973, 1014–15 (10th

Cir. 2004) (McConnell, J., concurring). So movants "must make a clear and unequivocal showing" that they are "entitled to such relief." *Colorado v. EPA*, 989 F.3d 874, 883 (10th Cir. 2021). Specifically, movants must establish that (1) they are "substantially likely to succeed on the merits," (2) they "will suffer irreparable injury if the injunction is denied," (3) their "threatened injury outweighs the injury the opposing party will suffer under the injunction," and (4) "the injunction would not be adverse to the public interest." *Id.*

Injunctive relief *altering* the status quo and giving the movant all relief that could be obtained at trial is even more extraordinary and difficult to obtain — in fact, it is specifically "disfavored." *Id.* at 883–84. So "[w]hen seeking a disfavored injunction, the movant must make a strong showing both on the likelihood of success on the merits and on the balance of the harms." *Id.* at 884.

Here, plaintiffs demand disfavored injunctive relief that alters the status quo (Mr. Green's visa refusal) and seeks all relief that could be obtained at trial: a court order requiring an "immediate adjudication of [Mr. Green's] visa application in [Mr. Green's] favor." Doc. 2 at 2; Doc. 1 at 20. Plaintiffs thus "must satisfy a heightened burden," *Ashcroft*, 389 F.3d at 975 (en banc opinion), and for the reasons detailed below, they fail to carry that burden.

I. NO LIKELIHOOD OF SUCCESS OR IRREPARABLE HARM

Plaintiffs, first, fail to demonstrate a likelihood of success on the merits or irreparable harm under the Religious Freedom Restoration Act (RFRA), Administrative Procedure Act (APA), and Declaratory Judgment Act (DJA).

**A.** Defendants explained why plaintiffs' RFRA, APA, and DJA claims are

inviable in detail in their Rule 12(b)(1) and 12(b)(6) motion to dismiss. Doc. 12 at 7–27. To summarize: (1) Plaintiffs lack Article III standing, *see id.* at 7–10; their claims are meritless under the consular-nonreviewability doctrine, *see id.* at 10–21; and (3) in all events, their RFRA claims founder under RFRA itself, *see id.* at 21–27. Plaintiffs thus fail to show — much less make the "strong showing" required for a disfavored injunction — that they are "substantially likely to succeed on the merits." *Colorado*, 989 F.3d at 883–84.

**B.** For the same reasons, plaintiffs also fail to make a "clear and unequivocal showing [that they] will likely suffer irreparable harm absent preliminary relief." *Id.* at 886. Irreparable harm is analyzed "in conjunction with whether the movant is likely to succeed on the merits," and without a likelihood of success, there is no irreparable harm. *Legacy Church*, 455 F. Supp. 3d at 1161–63 (finding no irreparable harm where a church was unlikely to succeed on the merits of its religious-freedom claims (citing *Winter*, 555 U.S. at 22)). Because plaintiffs' claims fail for the jurisdictional and merits-based reasons discussed in defendants' motion to dismiss, plaintiffs necessarily fail to show "clear and unequivocal" irreparable harm. *Colorado*, 989 F.3d at 886; *Legacy Church*, 455 F. Supp. 3d at 1161–63; *see* Doc. 12 at 7–27.

Plaintiffs' motion should be denied on these grounds alone.

II. THE EQUITIES FAVOR DEFENDANTS AND THE PUBLIC INTEREST

Plaintiffs also fail to demonstrate — much less make the required strong showing for disfavored injunctive relief — that their alleged "injury outweighs the injury [that defendants] will suffer under the injunction" and that an

injunction would serve the "public interest." *Colorado*, 989 F.3d at 883–84.

"As in the irreparable harm analysis, district courts in the Tenth Circuit must consider the likelihood of success" both when "analyzing potential harm" (*i.e.*, balancing the equities) and when "evaluating the public's interest." *Legacy Church*, 455 F. Supp. 3d at 1163–65; *see also, e.g.*, *La. Mun. Police Emp'ees' Ret. Sys. v. Cont'l Res.*, 886 F. Supp. 2d 1255, 1269 (W.D. Okla. 2012) ("Because Plaintiff has not shown a likelihood of success on the merits of its claims or that irreparable harm will result if the injunction does not issue, the Court finds the balance of harm weighs against issuing the injunction").

Here, the balance of harms favors defendants, and an injunction would undermine the public's interest. On one hand, plaintiffs allege inviable RFRA, APA, and DJA claims, failing to demonstrate a likelihood of success on the merits or irreparable harm. *See* Doc. 12 at 7–27. On the other hand, State Department consular officers, defendants here, acted to further a compelling government and public interest in refusing Mr. Green's R-1 visa in this case: preventing a specific visa applicant from obtaining a visa based on his misrepresentation to immigration officers, an abuse of the visa process that the Immigration and Nationality Act forbids. 8 U.S.C. § 1182(a)(6)(C)(i) ("Any alien who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa … is inadmissible"); *see* 8 U.S.C. §§ 1202(c), 1202(e), 1202(h), 1361; 22 C.F.R. §§ 41.11(a), 41.103(b), 42.62; 8 C.F.R. § 214.1(f) (all requiring honesty in the visa process); Doc. 1-2 at 1–2.

Indeed, the principal district court decision that plaintiffs rely on in this case specifically recognizes that "preventing immigration fraud," when particularized in the case at hand, "is likely a compelling state interest." *O Centro v. Duke*, 286 F. Supp. 3d 1239, 1265 (D.N.M. 2017) (finding no compelling interest only because, unlike here, "there [were] no allegations of fraud").

The balance of harms thus favors defendants, and injunctive relief would not serve the public interest, so plaintiffs' motion should be denied.

### III. A TRO is Unwarranted Given Plaintiffs' Delay

Last, while plaintiffs' request for a TRO fails for all the reasons explained above, it also fails for the independent reason that plaintiffs delayed substantially in seeking an "emergency" and "urgent" TRO in this case. Doc. 2 at 20.

As this Court has already recognized, a plaintiff's "delay in requesting a TRO militates against its issuance," as "[p]arties spurred on by the threat of or actual immediate irreparable harm, file for TROs as quickly as possible to head or stave it off" — they do not delay. Doc. 11 at 1–2 (collecting decisions); *see also, e.g.*, Wright & Miller, Fed. Prac. & Proc. § 2951 (2023) ("[P]laintiff's delay in seeking a [TRO] order is held as an indication that there is no immediate threat"); *Miller v. Lipinski*, 2020 WL 5096018, at *1 (D. Colo. 2020) (similar).

In this case, this Court has already held that plaintiffs "delayed in filing" suit and seeking a TRO and that "there is no immediate threat" to their alleged rights. Doc. 11 at 1–2. The facts bear out that conclusion. Plaintiffs specifically allege that consular officers refused Mr. Green's second and final R-1 visa application on "January 19, 2023." Doc. 1 ¶¶ 54–55. Plaintiffs also attached an

April 13, 2023 LegalNet advisory opinion from the Office of the Legal Adviser for Consular Affairs detailing the two independent reasons for Mr. Green's visa refusals. Doc. 1-2 at 1–2. Yet plaintiffs did not file suit seeking a TRO until June 5, 2023 — 137 days after the January 2023 visa refusal and 53 days after the LegalNet email. *See* Docs. 1–2.

Plaintiffs have offered no valid justification for this delay. As they correctly concede, "[n]o [administrative] exhaustion requirements apply to [their] complaint." Doc. 1 ¶ 18. That is because State Department consular officers have exclusive authority to grant or refuse visas, and there is no administrative-appeal process for a consular officer's decision to refuse a visa. *E.g.*, *Alshawy v. USCIS*, 2022 WL 970883, at *3 (D.D.C. 2022); *Logan v. Blinken*, 2022 WL 3715798, at *3 (D.D.C. 2022); *see* 8 U.S.C. § 1104(a). So their several-month delay belies their assertions that this case is an "emergency," Doc. 2 at 20, and "very urgent," Doc. 8 at 3, and their request for a TRO should be denied accordingly, *see* Doc. 11 at 1–2 (finding that, because plaintiffs "delayed in filing" this lawsuit, "there is no immediate threat" to their alleged rights).

## CONCLUSION

The Court should deny plaintiffs' motion for injunctive relief, and for the reasons explained in defendants' motion to dismiss (Doc. 12), this case should be dismissed.

August 7, 2023                    Respectfully submitted,

                                                        Alexander M.M. Uballez
                                                         *United States Attorney*

                                                      *s/ Benjamin G. Minegar*
                                                      Benjamin G. Minegar
                                                      *Assistant United States Attorney*
                                                      P.O. Box 607
                                                      Albuquerque, NM 87103
                                                      (505) 346-7274
                                                      benjamin.minegar@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that, on August 7, 2023, I filed this document electronically through CM/ECF, causing all counsel to be served by electronic means.

                                                      *s/ Benjamin G. Minegar*
                                                      Benjamin G. Minegar